IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA C. TURKOVICH, | ) | CASE NO. 1:12-CV-1633 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Linda Turkovich's ("Plaintiff" or "Turkovich") application for Social Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On February 25, 2010, Plaintiff filed an application for Supplemental Security Income benefits. (Tr. 17, 86, 132). Plaintiff alleged she became disabled on March 22, 2005, due to suffering from severe depression, degenerative disc disease, bipolar disorder, a pinched nerve, and rheumatoid arthritis. (Tr. 132, 151).

The Social Security Administration denied Turkovich's application on initial review on September 22, 2010. (Tr. 92-94). Her application was also denied upon reconsideration on February 22, 2011. (Tr. 102-104). Thereafter, Plaintiff requested a hearing before an

administrative law judge ("ALJ") to contest the denial of her application. (Tr. 109-11).  The administration granted Plaintiff's request and scheduled a hearing.  (Tr. 112-16).

On January 4, 2012, ALJ Charles Shinn convened a hearing to evaluate Plaintiff's application. (Tr. 470-504).[1]  Turkovich, represented by counsel, appeared and testified before the ALJ. (*Id*.).  A vocational expert ("VE"), Barbara Burk, also appeared and testified. (*Id*.).  On January 6, 2012, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 17-29).  After applying the five-step sequential analysis,[2] the ALJ determined Turkovich retained the ability to perform work existing in significant numbers in the national economy. (*Id*.).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review. (Tr. 12-13).  The Appeals Council denied Turkovich's request, making the ALJ's determination the final decision of the Commissioner.

---

[1] The transcript of the administrative hearing was filed by way of a Supplemental Transcript of Proceedings. (Doc. 17).

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

> (1)  If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.
>
> (2)  If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> (3)  If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> (4)  If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> (5)  Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

(Tr. 1-5). Plaintiff now seeks judicial review of the ALJ's decision. Review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Turkovich was born on December 16, 1963, and was 46 years old on the date she filed her application for benefits. (Tr. 27, 86). Accordingly, at all times, she was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 416.963(c). Turkovich has a high school education. (Tr. 152, 498). She has no past relevant work. (Tr. 27, 497).

### B. Medical Evidence

#### 1. Portage Path Behavior Health

Plaintiff began treatment for her mental health issues at Portage Path Behavioral Health ("Portage Path") in July 2001, approximately four years before her alleged on set date of March 2005. (Tr. 264). Around June 2009,[3] Plaintiff commenced a course of monthly sessions with therapist Cynthia Ball, M.S., and other Portage Path providers (Tr. 295). Given the scope of Plaintiff's appeal, the Court will give an overview of these monthly treatments, while not necessarily addressing every session that Plaintiff attended.

In June 2009, Ms. Ball noted anger, irritability, and suicidal thoughts after Plaintiff received a steroid injection for her neck pain. (Tr. 295). Plaintiff admitted to suicidal wishes, but denied suicidal intent. (*Id.*). During her July 2009 visit, Plaintiff appeared slightly irritable, but

---

[3] Plaintiff alleges that Ms. Ball began treating her on July 20, 2001 as indicated on a report completed by Ms. Ball in June 2010. (Pl.'s Br. at 4). However, based on the record, it is not clear when Ms. Ball first began treating Plaintiff. Ms. Ball's June 2010 report stated that Plaintiff was "first seen" on July 20, 2001 (Tr. 296), and the report later provides that Plaintiff had been treating at Portage Path since 2001. (Tr. 297). The only Portage Path record evidence from July 20, 2001 was an intake form filled out by Stephanie Leib, L.S.W., of Portage Path. (Tr. 264). It appears that Ms. Ball's note on the June 2010 report was referring to Plaintiff's initial evaluation at Portage Path. The first treatment record of Ms. Ball's that Plaintiff points to is dated June 23, 2009. (Tr. 295).

3

denied suicidal ideation. (Tr. 293).  A September 2009 Medical Somatic/Psychiatric Progress Note completed by Ms. D. Marshall, PMHCNS-BC (Psychiatric-Mental Health Clinical Nurse Specialist), showed a constricted affect and a dysphoric mood with a little irritability.  Aside from her depression, Plaintiff's thought process was organized; she denied hallucinations, delusions, and suicidal or homicidal ideation; she made good eye contact; her judgment was intact; and she showed no signs of cognitive deficits. (Tr. 288).  Plaintiff was prescribed Wellbutrin, Seroquel, Ativan, and Trazodone. (Tr. 289).  On October 7, 2009, Ms. Ball noted suicidal ideation with a plan, but that Plaintiff's mental status otherwise remained unchanged. (Tr. 284).  On October 7, 2009, Plaintiff reported that she was doing well on her medications and denied suicidal/homicidal ideation. (Tr. 285).  Plaintiff failed to attend her November and January appointments. (Tr. 283, 281).

On February 12, 2010, Ms. Marshall performed another mental status evaluation, which showed Plaintiff was slightly irritable due to chronic pain and appeared tense, but denied suicidal or homicidal ideation, was alert and oriented, had a normal thought process with intact insight and judgment, was sleeping well, and denied substance abuse. (Tr. 277-79).  During a February 22, 2010 session with Ms. Ball, Plaintiff reported recent strong suicidal urges and displayed a constricted affect. (Tr. 276).  However, by March 2010, Plaintiff's suicidal thoughts had abated and she mentioned to Ms. Ball that she had "attended a couple of family gatherings [without] any drama, [and] even enjoyed herself." (Tr. 275).  In May 2010, Plaintiff was not suicidal, and told Ms. Marshall that she was "doing well on med[ication] in spite of [increased] stress from conflicts" with her boyfriend. (Tr. 272).

On June 9, 2010, Ms. Ball completed a Mental Status Evaluation, which psychologist Avery Zook reviewed.[4] (Tr. 296-98). The evaluation form provided that Plaintiff had been diagnosed with bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), personality disorder, and not otherwise specified (strong borderline traits). (Tr. 297). Ms. Ball noted that Plaintiff was angry and irritable. Otherwise, Turkovich's grooming and affect were appropriate; she had normal speech and conversation; there were no signs of anxiety; no evidence of thinking disorders; she was alert and oriented; had normal cognitive functioning (concentration, memory, reasoning, and range of intelligence); displayed fair judgment and ability to adapt; was currently sober for five years; and her ability to understand and follow directions was normal. (Tr. 296). Ms. Ball opined that Plaintiff can become verbally aggressive when her pain is high or if she perceives herself to be judged negatively. (*Id.*). In addition, Plaintiff's ability to maintain attention, concentration, and complete tasks in a timely fashion depended on her pain level. (Tr. 297). Ms. Ball also noted a fair response to medication and limited progress in therapy. (Tr. 297). Completing the evaluation, Ms. Ball found that Turkovich could perform work that involved simple and routine or repetitive tasks if she had limited contact with other workers and the public. (*Id.*).

Based on the record, Plaintiff did not pursue mental health treatment until September 2010, at which time she told Ms. Marshall that she had increased irritability and crying spells. (Tr. 349). Though her mental status evaluation showed she was depressed, she denied suicidal ideation; had logical, organized, and goal oriented thoughts; was cooperative; and had adequate judgment. (*Id.*). Turkovich continued to take Wellbutrin, Seroquel, Trazodone, and Ativan, and began a prescription for Lamictal. (Tr. 350). Ms. Ball completed another mental status

---

[4] Portage Path requires that a psychologist or physician review mental status evaluations. (Tr. 298).

5

evaluation on December 16, 2010, in which she opined that there were no changes in Plaintiff's mental status from the June 9, 2010 Mental Status Evaluation. (Tr. 353-55).

In a February 2011 Treatment Plain Review, Turkovich stated that she was getting close to having no suicidal ideations and was assigned a Global Assessment Functioning ("GAF") score of 60, for the current evaluation and in the past year, which indicated moderate mental symptoms.[5] (Tr. 365). Psychiatrist A. Montuck, M.D., signed off on the report. On May 18, 2011, Plaintiff stated that the change to Lexapro was helpful, but she was still crying a lot, irritable, and had arguments with her boyfriend. (Tr. 424-25). While Ms. Marshall indicated that Plaintiff's mood was depressed, she otherwise was adequately groomed, denied suicidal thoughts, and had adequate judgment with organized thoughts. (*Id.*). During a July 2011 visit, Turkovich told Ms. Ball that she struck one of her cousin's roommates after he made an inappropriate remark to her. (Tr. 419). Ms. Ball discussed Plaintiff's "safety plan," and Plaintiff denied any intention to hurt herself, children, or therapist. (*Id.*). On September 14, 2011, Turkovich reported to Ms. Ball as very irritable, irate, and expressed frustration that medications, specifically Lexapro and Lamictal, were not working. (Tr. 417). Plaintiff admitted suicidal ideations, but denied any intention of acting on her thoughts. Ms. Ball noted that Turkovich minimized her statements about suicide when informed that she should consider hospitalization and when confronted with giving conflicting statements about suicidal thoughts. (*Id.*). While Plaintiff was initially hostile, she maintained organized thoughts, was well oriented, and her speech was at a normal rate and rhythm. (*Id.*). Plaintiff was transferred to another doctor because she was not responding to her medications. (*Id.*). An October 2011 mental status

---

[5] The GAF scale rates an individual's overall psychological functioning from 0 for inadequate information to 100 for superior functioning. See *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF in the range of 51-60 indicates moderate symptoms (like flat affect, circumstantial speech, or occasional panic attacks) *or* moderate difficulty in social or occupational functioning (such as few friends or conflicts with co-workers).

examination with a new physician at Portage Path showed no evidence of delusions; a clear and organized thought process; affect was appropriate, not depressed, and not manic; no evidence of suicidal ideation; and no suggestion of cognitive defects. (Tr. 408).

### 2. State Agency Reviewing Psychologist

On June 29, 2010, state agency reviewing psychologist, John Waddell, Ph.D., completed a Mental Residual Functional Capacity Assessment after reviewing Plaintiff's medical records. (Tr. 328-30). Dr. Waddell adopted ALJ Mark Carissimi's November 2008 RFC from Plaintiff's prior disability application, because Dr. Waddell's evaluation revealed Plaintiff's mental status was unchanged. (Tr. 330). ALJ Carissimi found Plaintiff capable of light work, that is simple and routine, does not involve high production quotas or piece work, has limited superficial interaction with coworkers and the general public, and does not involve negotiation or confrontation. (Tr. 74). In accordance with ALJ Carissimi, Dr. Waddell noted that Turkovich continued to be mildly limited in activities of daily living, and moderately limited in social interaction, concentration, persistence, and pace. (Tr. 330). He found no episodes of decompensation. (*Id.*).

### 3. Post-Hearing Report

On January 3, 2012, Ms. Ball completed a Mental Residual Functional Capacity Questionnaire, which was also signed by psychiatrist Vincent Luna, M.D. (Tr. 464-69). Plaintiff submitted this report to the ALJ after the administrative hearing and after the ALJ rendered his decision. The report summarized Plaintiff's course of treatment with Portage Path, including that she was seen for medication every one to two months and therapy about each month. (Tr. 464). Ms. Ball noted that Plaintiff suffered from bipolar disorder, depression, PTSD, alcohol dependence in remission, personality disorder, and had limited improvement with medication

and therapy.  The report also stated that Turkovich had reported episodes of mood instability; had an abnormal level of irritability and anger; was distrustful of others, especially men; and had limited skills to cope with stress.  The prognosis was fair to poor.  The report reviewed Turkovich's various symptoms, including: thoughts of suicide, mood disturbance, apprehensive expectation, emotional withdrawal or isolation, and deeply ingrained maladaptive patterns of behavior.  (Tr. 465).  As in her previous reports, Ms. Ball again noted that Turkovich does not deal well with people and her anger increases with her physical pain. (Tr. 467).   In the sections of the report that addressed Plaintiff's mental abilities and aptitudes needed to work, Ms. Ball wrote "unable to assess." (Tr. 466-67).

### III. THE ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since February 25, 2010, the application date.

2. The claimant has the following severe impairments: degenerative disc disease, asthma, Bipolar II disorder, major depressive disorder, personality disorder, anxiety disorder, post-traumatic stress disorder, and alcohol dependence in partial remission.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.867(b) except the claimant can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently.  She can sit for six hours in a normal workday, and stand and/or walk for six hours in a normal workday.  The claimant must avoid concentrated exposure to smoke and fumes.  She is limited to simple, routine work that does not involve high production quotas or piece work.  The claimant is limited to superficial interaction with coworkers and the general public that does not involve negotiation or confrontation.

5. The claimant has no past relevant work.

6. The claimant was born on December 16, 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.  The claimant has at least a high school education and is able to communicate in English.

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 25, 2010, the date the application was filed.

(Tr. 19-28) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might

accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

### A. Sentence Six Remand

Plaintiff argues that remand is warranted to consider the January 3, 2012, report of Ms. Ball and Dr. Luna.  Plaintiff's oral hearing was held on Wednesday, January 4, 2012. (Tr. 470). Following the hearing on Friday, January 6, 2012, counsel for Plaintiff received the report from Dr. Luna and Ms. Ball. (Tr. 462).  The report was dated January 3, 2012. (Tr. 469).  The ALJ issued his decision on January 6, 2012, finding that Plaintiff was not disabled. (Tr. 29).  On Monday, January 9, 2012, Plaintiff alleges that her counsel contacted the ALJ, advised the ALJ's assistant of the report, and requested permission to submit it. (Pl.'s Brief at 8).  The record contains a letter to the ALJ dated January 9, 2012, in which Plaintiff's counsel requested to submit this additional evidence. (Tr. 462-69).

Sentence six of 42 U.S.C. § 405(g) permits a court to remand a case back to the ALJ for consideration of new evidence under certain circumstances.  The plaintiff must show that the

evidence is (1) new, (2) material, and (3) there was good cause for the failure to incorporate such evidence into the prior proceeding.  42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam).  Remand is only proper when all three elements are satisfied.

The Court may not reverse an ALJ's decision on the basis of evidence first submitted to the Appeals Council. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). In cases such as the instant case, where the new evidence was not submitted to the ALJ before he rendered his decision and the Appeals Council declined the claimant's request for review even with the new evidence, the Court's role is to review the ALJ's decision and determine whether it is supported by substantial evidence in the record at the time the ALJ issued his decision. *Id.*  However, Plaintiff also seeks remand in order for the ALJ to consider the effect that Dr. Luna and Ms. Ball's assessment would have had upon the ALJ's disability determination.  Accordingly, the Court will discuss whether the January 3 evaluation warrants remand under sentence six of 42 U.S.C. § 405(g).

### 1. New

To be considered "new," the evidence at issue must not have been "in existence or available to the claimant at the time of the administrative proceeding." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (*citing Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).  In addition, "[n]ew evidence must indeed be new; it cannot be cumulative of evidence already in the record." *Elliot v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002) (unpublished opinion) (*citing Robertson v. Shalala*, 1996 WL 384542, at *3 (6th Cir. July 8, 1996)).  The Court finds that the January 3 report does not constitute new evidence.  Despite efforts by Turkovich's counsel to send the ALJ a copy of the report promptly upon receipt, Turkovich

proffers no reason as to why she could not have obtained Ms. Ball and Dr. Luna's opinions prior to the hearing.  Plaintiff had a long-standing treatment relationship with Portage Path and had been treating with Ms. Ball since at least June 2009. (Tr. 295).  Ms. Ball completed similar mental status evaluations of Turkovich in the past. (Tr. 296-98, 353-55).  Presumably, Turkovich could have acquired an additional opinion from Ms. Ball and Dr. Luna prior to the hearing with enough time to include the report in the record before the ALJ.  In addition, Plaintiff has not sufficiently explained how the report adds anything to the existing records of her visits with Ms. Ball and other Portage Path providers, beyond serving as a summary of observations.  Thus, the report is not new because it appears to be merely cumulative and was available before the hearing, even though it was obtained at a later date. *See* [Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 549 (6th Cir. 2002)](#) (unpublished opinion) (*"*Although [the claimant] had not prepared this new version of her history before the first hearing, all the information in it was available before the ALJ's decision.  Therefore, it is not new information.").

## 2.  Material

Remand is also unnecessary because the report is not material.  Evidence is material when there is a reasonable probability that the ALJ would have decided the claim differently if presented with the new evidence. [Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 484 (6th Cir. 2006) (*quoting* Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001))](#).  According to Turkovich, the joint report is material because the evidence is probative of the severity of the conditions that were present during the period for which she is seeking benefits.  Plaintiff maintains that the statement provides a summation of the long-standing history of her mental health issues, the efficacy of treatment, and the limitations imposed on her ability to perform or engage in work activity.  Additionally, Turkovich contends that because the ALJ gave Ms. Ball's

12

other opinions great weight, these new statements may have influenced the ALJ to rule differently.

Plaintiff has failed to show that the report furthers her cause. The report gives an overview of Ms. Ball's treatment of Plaintiff, her medications, and describes Plaintiff's metal illnesses and symptoms. (Tr. 464-65). These illnesses, and the vast majority of Plaintiff's symptoms, were already fully considered by the ALJ in his review of Ms. Ball's treatment notes, which were part of the record at the time he rendered his decision. Significantly, the report does not include an assessment of Plaintiff's functional limitations, nor did Ms. Ball and Dr. Luna place any restriction on Plaintiff's ability to work. In fact, Ms. Ball wrote "unable to assess" over each section of the report that addressed Plaintiff's ability to do work-related activities, such as understanding and carrying out directions or responding to changes in work setting. (Tr. 466-68). Plaintiff has not shown that the report offers any more than a summary of her prior treatment records, making it unlikely that the report would have caused the ALJ to reach a different disposition regarding Plaintiff's ability to work. Accordingly, it does not fall within the administration's definition of material evidence.

### 3. Good Cause

Lastly, Turkovich has not shown good cause. A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). Plaintiff maintains that she did not obtain a copy of the report until after her hearing, and once her counsel received the evidence, it made all efforts to contact the ALJ and submit the evidence within five days of her hearing. (Pl.'s Br. at 10). Turkovich further notes that it is "highly unusual for a hearing decision to be issued within two days of a hearing. Therefore, submission

of new evidence within a very short period of time of the hearing . . . is customarily allowable, and almost always considered." (*Id.*). Turkovich's arguments are not well taken, as she has failed to cite any case law supporting her contention that the ALJ typically accepts new evidence submitted shortly after the hearing. Furthermore, the Sixth Circuit has noted that the "good cause requirement [is] not met where [the] claimant did not request at [the] ALJ hearing that the record remain open until additional evidence could be submitted." *Delgado*, 30 F. App'x at 549 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). As Defendant correctly asserts, during the hearing, counsel for Plaintiff stated that to the best of her knowledge, the medical record was up to date. (Tr. 475). Plaintiff's counsel did not request that the record remain open. Turkovich provides no other good explanation as to why the January 3 report could not have been obtained prior to the hearing.

### B. Step-Five Finding

Turkovich also argues that the ALJ's hypothetical question to the vocational expert ("VE") did not accurately reflect her mental limitations, and therefore, the ALJ's reliance on VE testimony to support the residual functional capacity ("RFC") was in error. To support the alleged need for further limitations, Plaintiff notes a long-standing history of depression and bi-polar disorder, and that during therapy sessions, Ms. Ball often observed her as severely irritable, tearful, relating suicidal ideation, and complaining of chronic pain. More specifically, Plaintiff argues that her mental impairments require her to have two additional thirty minute workday breaks, which she alleges would cause her to be off task twenty percent of the day. Plaintiff also alleges that the post-hearing report supports the need for additional breaks. However, as previously noted, the Court cannot consider the evidence in the post-hearing report when reviewing the ALJ's hypothetical question and final RFC finding. *See Foster v. Halter*, 279 F.3d

348, 357 (6th Cir. 2001) (*citing Cline v. Comm'r Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). ("[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for the purposes of substantial evidence review."). In addition, Plaintiff's remaining arguments do not hold weight.

Testimony of a VE in response to a hypothetical question may serve as substantial evidence that the claimant has the ability to perform specific jobs as long as the question accurately accounts for the individual's physical and mental impairments. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (*quoting Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005). But "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005)). When forming a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In the present case, the hypothetical question included the following non-exertional limitations: simple, routine work that does not involve high production quotas or piece work, and is limited to superficial interaction with coworkers and the general public that does not involve negotiation or confrontation. (Tr. 498). The VE identified three jobs that Plaintiff was capable of performing given these limitations. (Tr. 499).

Turkovich has failed to show that the ALJ improperly omitted limitations when formulating the hypothetical question and RFC. While Plaintiff suggests the need for additional workday breaks, she points to no medical source, including Ms. Ball, prescribing this

requirement or any other limitation not already included in the hypothetical. Plaintiff also notes no case law indicating that the symptoms arising from her mental impairments translate into a need for additional breaks or further limitations. It is well-established that the "claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)." *Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990)*. Turkovich has not shown that she is impaired beyond those limitations in the hypothetical question.

Contrary to the Plaintiff's allegations, the controlling hypothetical question and the perfectly corresponding RFC are supported by substantial evidence. (Tr. 22). When formulating the hypothetical question and RFC, the ALJ carefully reviewed Plaintiff's treatment records and relied on the opinions of Ms. Ball. In her June 2010 Mental Status Evaluation, Ms. Ball opined that Plaintiff could perform work involving simple and routine or repetitive tasks if she had limited contact with other workers and the public. (Tr. 297). The ALJ incorporated these limitations in his hypothetical question, and further limited Turkovich to work that does not involve negotiation or confrontation. The ALJ noted that Ms. Ball is not an acceptable medical source, but given her treatment of Plaintiff over the course of several years, Ms. Ball had gained an intimate knowledge of Plaintiff's mental impairments, making her opinions credible.[6] (Tr. 24). In addition, the ALJ relied on state agency consultant Dr. Waddell's opinions. (Tr. 330). Dr. Waddell adopted the RFC of ALJ Carissimi in Plaintiff's prior Social Security application because the RFC remained consistent with Plaintiff's mental status. This RFC was identical to that adopted by the ALJ in Plaintiff's current case. Finally, the ALJ noted additional evidence in

---

[6] Although therapists do not fall under the Regulations' definition of an acceptable medical source, and therefore cannot be considered treating sources, an ALJ should consider evidence from therapists and other medical professionals because such evidence may provide information regarding the severity of a claimant's impairment. 20 C.F.R. § 416.913(d); SSR 06-03p; *see also Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 540-42 (6th Cir. 2007)*.

support of his assessment, such as Plaintiff's ability to appropriately groom and dress for counseling sessions; her alertness, orientation, and lack of cognitive deficits throughout her therapy sessions; and her ability to socially interact with her boyfriend throughout the period of alleged disability. (Tr. 21). The ALJ acknowledged that Plaintiff had dealt with some anger and frustration problems, but the record did not reveal any ongoing behavior issues. (*Id*.). An ALJ's ruling must stand so long as it is supported by substantial evidence, though substantial evidence might also support a different conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). Given that substantial evidence supports the ALJ's RFC and corresponding hypothetical question, Plaintiff's request for remand on this basis is denied.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: October 28, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objective has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).